McKean, Nixon & Shannon
David Shannon, OSB No. 044137
david@mckeannixon.com
Jordin Lewis-Martinez, OSB No. 262937
jordin@mckeannixon.com
1140 SW 11th Ave, Suite 500
Portland, Oregon 97205
503-567-7967
*Of Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| PETER ROSCOE, an individual,<br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON, a New Jersey domestic profit corporation, and ETHICON, INC., a New Jersey domestic profit corporation,<br>Defendants. | Case No. 3:26-cv-2051<br><br>**COMPLAINT** – Strict Product Liability-Design Defect; Negligence<br><br>DEMAND FOR JURY TRIAL |

COMES NOW, Plaintiff, Peter Roscoe, (hereinafter "Plaintiff"), by and through McKean, Nixon & Shannon, LLP, and brings this action against Defendants Ethicon, Inc., and Johnson & Johnson (collectively "Defendants"), and allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. At all relevant times, Plaintiff was and is an individual domiciled in Astoria, Clatsop County, Oregon.

2. Defendant Johnson & Johnson is a New Jersey domestic profit corporation organized under the laws of that state, with its principal place of business in New Brunswick, New Jersey.

3. Defendant Ethicon, a subsidiary of Defendant Johnson & Johnson, is a New Jersey domestic profit corporation organized under the laws of that state, with its principal place of business in Somerville, New Jersey.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) "diversity jurisdiction" because complete diversity exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendants because Defendants purposefully distributed and sold the product at issue in this litigation, Ethicon Prolene® Polypropylene Mesh for use in Oregon and the product was used in Oregon with respect to Plaintiff's medical care. The Prolene Mesh was implanted and used in Oregon in this instance and regularly in Defendants' ordinary course of trade.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district, including the implantation of the medical mesh, Plaintiff's injuries, and Plaintiff's medical treatment.

**FACTUAL ALLEGATIONS**

7. Plaintiff is a former Navy service member and previously operated a restaurant in Astoria, Oregon.

8. Prior to May 2017, Plaintiff was healthy, physically active, regularly worked as a chef, and had no previous major surgeries.

9. While at work, Plaintiff was able to regularly lift objects and work on his feet for long periods of time without any issues.

10. On May 11, 2017, Plaintiff underwent surgery at Portland VA Medical Center to repair a right inguinal hernia.

11. Plaintiff's surgeon implanted an Ethicon Prolene® Polypropylene Mesh device (hereinafter "Prolene Mesh") to repair Plaintiff's right inguinal hernia.

12. Plaintiff's surgeon, as set forth in the applicable medical record, used the Prolene Mesh "with a slit cut into it to reinforce the inguinal floor, leaving the spermatic cord through it. [The surgical team] tacked down the Prolene Mesh to the inguinal ligament and the transversus muscle[.]"

13. Plaintiff tolerated the surgery well and initially felt better following the procedure, apart from the ordinary post-operation healing process.

14. In March 2018, less than a year after the Prolene Mesh implantation, Plaintiff experienced severe upper abdominal pain, nausea, vomiting, and dry heaving.

15. Plaintiff sought emergency medical treatment and remained at the emergency department for several days while medical personnel conducted testing.

16. A computed tomography (CT) scan showed dilated, inflamed mid-to-distal small-bowel loops with air-fluid levels and a transition point in the mid-abdomen, consistent with a small-bowel obstruction.

17. Medical providers treated Plaintiff with nasogastric (NG) tube suction, intravenous fluids, and medication for nausea and pain. A subsequent small-bowel series showed the obstruction resolved, and the hospital discharged Plaintiff.

18. In August 2020, Plaintiff again sought emergency medical treatment for severe abdominal pain, distention, nausea, retching, and absence of bowel movements.

19. CT imaging showed a high-grade small-bowel obstruction, with findings raising the possibility of a closed-loop obstruction.

20. Medical providers treated Plaintiff with an NG tube suction and intravenous fluids. After Plaintiff's symptoms resolved, the hospital discharged Plaintiff.

21. Following that episode, Plaintiff changed his diet, chewed food more thoroughly, and used an over-the-counter stool softener to avoid further gastrointestinal distress.

22. Additionally, between the two emergency room visits in 2018 and 2020, Plaintiff developed hydroceles, a collection of fluid in the scrotum, on two separate occasions.

23. Plaintiff required a urologist to drain fluid from the hydroceles on no less than two separate occasions.

24. Between August 2020 and May 2026, Plaintiff experienced ongoing moderate abdominal pain and other symptoms but continued to eat a simple diet, chew his food thoroughly, and take stool softeners.

25. On May 7, 2026, Plaintiff presented to the emergency room with severe abdominal pain, nausea, dry heaves, and chills, and reported the symptoms felt similar to the prior small-bowel obstructions.

26. A CT scan of Plaintiff's abdomen and pelvis showed a small-bowel obstruction, mesenteric edema, and pneumatosis of the bowel wall suggestive of ischemia. The radiologist reported these findings could represent a closed-loop obstruction.

27. The emergency medical provider recommended an emergent exploratory laparotomy with a possible bowel resection or possible temporary abdominal closure.

28. The attending physician noted the Plaintiff was at high risk of morbidity and mortality because of the small bowel obstruction; thus, Plaintiff consented to surgery.

29. During this emergency surgery, Plaintiff's doctors found a closed-loop small bowel obstruction related to Prolene Mesh adhesions.

30. The surgical team removed the Prolene Mesh and 8.5 cm of Plaintiff's small intestine. The Prolene Mesh was defective in that it had caused adhesions, damaged and blocked Plaintiff's intestine, and created mortal risk to Plaintiff.

31. Plaintiff endured repeated and severe episodes of abdominal pain, at least two visits to the emergency department, invasive extraction procedures, bowel obstructions, surgical removal of a portion of his intestine, and two bouts of hydroceles as well as years of pain and discomfort all as a result of design defects and the dangerous and defective nature of the Prolene Mesh.

32. Following the May 2026 Prolene Mesh removal surgery, Plaintiff was unable to perform normal daily activities for approximately two to three months.

33. Plaintiff has not experienced gastrointestinal discomfort since removal of the Prolene Mesh.

34. At all relevant times, Defendants designed, developed, tested, manufactured, labeled, marketed, promoted, distributed, and sold the Prolene Mesh for the purpose of repairing ventral and inguinal hernias.

35. Polypropylene, as used in the Prolene Mesh, as designed by the Defendants, can lead to adhesions and migration to nearby organs and require surgical removal.

36. Defendants knew or, in the exercise of reasonable care, should have known that polypropylene Prolene Mesh implanted in or near internal organs posed a substantial risk of adhesion, erosion, migration, inflammation, bowel obstruction, and bodily injury requiring surgical intervention.

37. Defendants nevertheless designed, manufactured, marketed, distributed, and sold the Prolene Mesh without adequately eliminating or reducing the risks of severe bodily injury.

38. Defendants placed the Prolene Mesh into the stream of commerce with the expectation that it would be sold, implanted, and used to repair patients' hernias in Oregon, including Plaintiff's.

39. At all relevant times, each Defendant acted directly and through its officers, employees, agents, affiliates, subsidiaries, distributors, and representatives within the course and scope of those relationships.

**FIRST CLAIM FOR RELIEF**

**STRICT PRODUCT LIABILITY–DESIGN DEFECT**

**(Against All Defendants)**

40. Plaintiff incorporates by reference the prior paragraphs of this Complaint.

41. A product is considered "unreasonably dangerous" if it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, possessing the ordinary knowledge common to the community as to its characteristics.

42. The Prolene Mesh was designed and intended for implantation in the human body, including in or near the abdominal cavity and internal organs.

43. The Prolene Mesh is inherently dangerous because when implanted in or adjacent to the abdominal cavity, intestines, and other internal organs because it is susceptible to adhesion to bodily tissue and organs, erosion, migration, inflammation, bowel obstruction, and injury to surrounding tissue.

44. The Prolene Mesh's intended implantation makes the product inherently dangerous because the intended implantation places the polypropylene material in proximity to the organs and tissue vulnerable to adhesion, obstruction, erosion, and other bodily injury.

45. At the time the Prolene Mesh left Defendants' control, it was defective and unreasonably dangerous because its polypropylene design created unreasonable risks of adhesion, erosion, migration, inflammation, bowel obstruction, and injury to internal organs and tissues.

46. The Prolene Mesh implanted in Plaintiff did not perform safely in its intended and reasonably foreseeable use–to repair an inguinal hernia. In fact, it did create adhesions; erode, migrate, inflame and obstruct Plaintiff's bowels; and injure his gastrointestinal tract.

47. The Prolene Mesh caused Plaintiff's repeated bowel obstructions, severe abdominal pain, emergency treatments, invasive medical procedures, removal surgery, and intestinal resection.

48. The Prolene Mesh's design rendered the product more dangerous than an ordinary and reasonable user would expect when used for its intended purpose.

49. The risks posed by the Prolene Mesh's polypropylene design outweighed its utility.

50. The Prolene Mesh was used in a reasonably foreseeable manner -in fact the use intended and advertised by Defendants -when it was surgically implanted in Plaintiff for treatment of his inguinal hernia.

51. The defective and unreasonably dangerous design of the Prolene Mesh caused Plaintiff's injuries and damages, including severe abdominal pain, repeated bowel obstructions, emergency treatments, invasive procedures, Prolene Mesh-removal surgery, intestinal resection, medical expenses, mental anguish, and loss of enjoyment of normal activities. Plaintiff was also required to engage in mitigating conduct including adjusting his diet, the use of stool softeners, deliberate mastication and other methods to limit the impact of Defendants' dangerous product on his health and well-being.

## SECOND CLAIM FOR RELIEF

## NEGLIGENCE

**(Against All Defendants)**

52. Plaintiff incorporates by reference the prior paragraphs of this Complaint.

53. Defendants owed Plaintiff a duty to exercise reasonable care in the design, testing, inspection, manufacture, marketing, distribution, and sale of the Prolene Mesh.

54. Defendants owed Plaintiff a duty to exercise reasonable care their products did not pose a significantly increased risk of bodily injury.

55. Defendants breached that duty by, among other things:

a. Designing, manufacturing, and selling the Prolene Mesh device that was inherently dangerous for implantation in the human body;

b. Failing to design the Prolene Mesh to reduce or prevent adhesion, erosion, migration, inflammation, bowel obstruction, and injury to surrounding tissue; and

c. Failing to adequately disclose the severity of the risks associated with the Prolene Mesh's polypropylene material and design.

56. Defendants knew or should have known their acts and omissions created an unreasonable risk of serious bodily injury to patients, including Plaintiff.

57. Defendants' negligence was a substantial factor in causing Plaintiff's severe bodily injuries.

58. Defendants' negligence was a direct, proximate, and foreseeable cause of Plaintiff's injuries and actual damages, including severe abdominal pain, repeated bowel obstructions, emergency treatments, invasive procedures, surgical removal of the Prolene Mesh, resection of a portion of Plaintiff's intestine, medical expenses, mental anguish, and loss of enjoyment of normal activities.

**PRAYER FOR RELIEF**

59. WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, as follows:

a. An award of economic damages in an amount to be determined at trial but not less than $100,000;

b. An award of non-economic damages in an amount to be determined at trial but not less than $1,000,000;

c. Pre-judgment interest;

d. Post-judgment interest;

e. An award of Plaintiff's costs and disbursements incurred herein; and

f. Any other relief this Court deems just and proper.

**JURY DEMAND**

60. Plaintiff demands a trial by jury on all issues so triable.

Dated: October 5, 2026

Respectfully submitted,

MCKEAN, NIXON & SHANNON

/s/ David Shannon
David B. Shannon, OSB No. 044137
david@mckeansnixon.com

/s/ Jordin Lewis-Martinez
Jordin Lewis-Martinez, OSB No. 262937
jordin@mckeannixon.com

1140 SW 11th Ave, Suite 500
Portland, OR 97205
*Of Attorneys for Plaintiff*